RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0109-MR

ROBERT MANGINE          APPELLANT

v.        APPEAL FROM KENTON FAMILY COURT
HONORABLE CHRISTOPHER J. MEHLING, JUDGE
ACTION NO. 15-CI-01279

KRISTEN MANGINE          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: Robert Mangine ("Robert") appeals from several orders of

the Kenton Family Court in his ongoing custody dispute with ex-wife, Kristen

Mangine ("Kristen").[1] After careful review, we affirm.

---

[1] Robert previously appealed an award of attorney's fees which a panel of this Court affirmed in *Mangine v. Mangine*, No. 2018-CA-000877-ME, 2019 WL 3992458 (Ky. App. Aug. 2, 2019).

Robert and Kristen were married in 2006 and had two children together: S.M., born in 2010, and M.M., born in 2013, both girls.[2] In 2016, a Decree of Dissolution of Marriage was entered in Kenton Family Court and the parties were awarded joint custody of the children. Since then, Robert and Kristen have been engaged in litigation, unable to agree on the children's extracurricular activities. Relevant to the appeal, Robert filed a motion to modify parenting time in August 2021. Mother filed a motion for sole custody, or in the alternative, sole decision-making authority. She also sought a change in the current order regarding the children's Catholic education classes ("PSR").[3]

The court held hearings on the motions on February 28, 2022, April 22, 2022, June 8, 2022, July 15, 2022, and November 14-15, 2022. At the July hearing, the children's counselor, Kim Witte ("Mrs. Witte"), testified that she is treating S.M. for generalized anxiety, as well as attached phobias and panic attacks. According to Mrs. Witte, S.M.'s anxiety is greatly improved. Unlike S.M., M.M. does not have clinical anxiety, only situational. However, Mrs. Witte reported M.M. recently had a clinically significant episode where she was anxious in school and wanted to go home. Overall, Mrs. Witte testified the girls "don't

---

[2] At the time of the family court's rulings, the children were twelve and nine years old, respectively.

[3] Parish School of Religion.

have an overabundance of needs, but they do have more significant needs because of the clinical issues." She has discussed with the parents about decreasing the children's therapy to an as-needed basis but also recognized that S.M. may have some anxiety throughout her life. The general tenor of Mrs. Witte's testimony was that therapy successfully treated the children's needs.

Kristen, by contrast, felt that Robert's unwillingness to cooperate concerning the children's activities had resulted in increased anxiety for the children. She testified the current system of mediating the children's activities three times a year is unworkable, and the children miss out on activities because Robert refuses to discuss activities outside mediation. For example, S.M. wanted to participate in Color Guard, but the idea came up between mediations. Kristen mentioned the idea to Robert, but he said no, without explanation. Similarly, S.M. could not compete on the academic team because the activity could not be mediated in time.

In another instance, S.M. expressed interest in a school event called "Girls on the Run," scheduled to begin on February 14, 2022. About a week before signups, Kristen messaged Robert about S.M.'s desire to participate, noting the limited spots available. Robert did not respond, and Kristen sent another message four days later, expressing urgency and a desire that S.M. not miss out.

Robert finally agreed, almost two weeks later, but only after the child's therapist intervened and recommended S.M. be allowed to participate.

Kristen testified Robert lacks emotional insight into the girls' needs and uses their activities to exert control over her. For example, he threatened to take the kids out of activities occurring during his parenting time if she would not agree to certain conditions. He lets his feelings toward her supersede the children's wants and needs.

Kristen cited Girls on the Run as one example. Robert was not willing to agree without mediation or the children's therapist getting involved and did not consider how S.M.'s anxiety might be affected by the delay and the uncertainty of whether she would get to participate. The children's guardian *ad litem* agreed that Robert does not always take S.M.'s anxiety seriously. As to M.M., she is sensitive and struggles socially, especially in making friends. Robert pushes her to do things at the country club or with big groups of new people but does not think about how interacting with all those new people might affect her.

Following the hearing, the family court denied Robert's motion to modify parenting time, and denied Kristen's motion for sole custody, but granted her sole decision-making authority as to the children's activities. The court also ordered that both parties include the other in any email communications with Mrs. Witte. Finally, it vacated its prior order concerning PSR.

Robert filed a motion to alter, amend, or vacate, requesting more specific findings as to the court's findings that its failure "to assign activity decision-making authority solely to [Kristen] has significantly impaired the children's emotional development[,]" and that S.M. was still "an emotionally fragile child"; that the court make its order denying recusal final and appealable; that the court alter its PSR ruling to specifically set a time for PSR; and that the court alter its order to allow ex parte communications with Mrs. Witte. The court denied the motion to alter, amend, or vacate. This appeal followed.

Our standard of review in a child custody case is whether the trial court's factual findings are clearly erroneous. *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citations omitted). A factual finding is not clearly erroneous if supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion." *B.C.*, 182 S.W.3d at 219 (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

As an initial matter, Kristen has filed a motion to strike Robert's appellate brief and dismiss the appeal for failure to comply with the Kentucky Rules of Appellate Procedure ("RAP"). Specifically, she argues that Robert's brief fails to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by RAP 32(A)(4) and his Statement of the Case fails to include ample citations to the record in violation of RAP 32(A)(3). Robert filed a response objecting to the motion and its disposition was passed to this panel.

Failure to comply with the RAP may result in sanctions, including striking an appellate brief. RAP 31(H). However, in this instance, we find sanctions unwarranted. While Robert's brief does not technically include a preservation statement, his arguments were all preserved by his motion to alter, amend, or vacate, which is referenced numerous times in his appellate brief. Further, his Statement of the Case contains ample citations. Kristen takes issue with Robert only citing the video record twice in that section of his brief because of the multiple hearings – and testimony from those hearings – relevant to the appeal. However, his argument section contains over twenty citations to the video record, compensating for any lack of citations to the hearings in his recitation of the facts. In sum, because this case involves custody matters affecting children, and we have been able to determine all arguments were properly preserved, we

decline to impose sanctions and will proceed with the review.  The motion to strike Robert's brief and dismiss the appeal is denied by a separate order.

Robert argues the family court abused its discretion in (1) granting Kristen sole decision-making authority concerning the girls' activities; (2) denying his motion to modify parenting time; (3) prohibiting ex parte contact with the children's therapist; (4) modifying its prior PSR order; and (5) failing to make its order denying recusal final and appealable.  We address each of these claims in turn.

As to Robert's first argument, "equal decision-making power is not required for joint custody, and . . . trial courts are free to vest greater authority in one parent even under a joint custody arrangement." *Fenwick v. Fenwick*, 114 S.W.3d 767, 776 (Ky. 2003), *overruled on other grounds by Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008).  However, a family court "may assign a major child-rearing decision solely to one party only if it finds, after a hearing, that the failure to assign the authority for a child-rearing decision solely to one party will endanger the child's physical health or significantly impair the child's emotional development." *Id.* (citing KRS 403.330(1)).

Here, the family court found its failure "to assign activity decision-making authority solely to [Kristen] has *significantly impaired the children's*

*emotional development* pursuant to KRS 403.340." (Emphasis added.)[4]  Robert argues this finding is unsupported by substantial evidence.  He points to Mrs. Witte's testimony that S.M.'s anxiety is "greatly improved" and that both girls "have shown improvement across the board, especially in home life."  Robert argues "there was no evidence offered by the therapist that either child was emotionally fragile or impaired emotionally."

While Mrs. Witte testified both girls have improved emotionally, we do not think this testimony is incompatible with the family court's finding that its failure to grant Kristen sole decision-making authority concerning the children's activities has significantly impaired the children's emotional development.  Improvement and impairment are not mutually exclusive.  Simply because the children have shown improvement does not mean their emotional development has not been (or would not further be) significantly impaired by their parent's inability to agree concerning extracurricular activities.  The mere fact the children need a therapist suggests everything is not okay.  Mrs. Witte testified that while the

---

[4] While the family court cited KRS 403.340, we assume this was a typographical error, as it quoted language from KRS 403.330, the relevant statute, which provides in relevant part: "Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's . . . *emotional development* [*would be*] *significantly impaired*."  KRS 403.330(1) (emphasis added).

children "don't have an overabundance of needs . . . they do have more significant needs because of the clinical issues."

Kristen testified to multiple examples where S.M. missed out on activities because the parents could not agree on her participation, and how that affected S.M.'s anxiety. Emails from Mrs. Witte to Robert and Kristen, sharing S.M.'s perspective, further support the court's finding. Just seven months before the July 15, 2022 hearing, in which Mrs. Witte testified, she reports that S.M.

> was tearful in her session, regarding what she perceives as regression in [regarding] her activities choices and the process. She feels she missed out on academic team because of this and now desires to consider Cincinnati Ballet classes. She understands that I am no longer in the role of assisting with the sports [selection] but struggled to understand this from an emotional standpoint . . . . I let her know her parents will be working together to determine her sports . . . and she noted "but it's not working."

In another email, two months prior, Mrs. Witte notes how S.M. was struggling with the new process of the parents mediating her extracurricular activities. Previously, as alluded to in the above email, Mrs. Witte had been a liaison between the children and parents on activities.

> [S.M.], understandably, found our prior process to be fairly stress free, workable and relieving. Apparently she felt a reduction in her loyalty conflicts during the time that this took place. . . . [S]he feels let down that nothing is moving forward in that area, that the Judge did decide to have the two of you try a new way of talking together and coming to agreements. She felt this may cause her to

miss opportunities. . . . She had a bit of a lip quiver when telling me about it, so clearly it is upsetting her . . . . [T]o her, there was a sound foundation and now it has been removed from her, at a time when predictability is desired by her at an even higher level (friend stress seemed really troubling).

Substantial evidence in the record supports the family court's finding that its failure to grant sole decision-making authority to Kristen over the children's activities has significantly impaired their emotional development, therefore we find no abuse of discretion.

Robert next argues the family court abused its discretion when it failed to grant him equal parenting time. A "family court has broad discretion in modifying timesharing." *Layman v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020) (citation omitted). Accordingly, we "will only reverse a trial court's determinations as to visitation if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case." *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky. App. 2000). Under KRS 403.320(3), parenting time may be modified "whenever modification would serve the best interests of the child[.]" *Layman*, 599 S.W.3d at 429.

Here, the family court found modifying parenting time was not in the children's best interests, particularly S.M. It noted although S.M. has improved, she is still an emotionally fragile child, and Mrs. Witte has repeatedly said that

-10-

change is adverse for her. The court cited evidence from the hearings of S.M.'s continued sensitivities.

Robert argues these findings are not supported by substantial evidence, again citing Mrs. Witte's testimony that S.M.'s anxiety is greatly improved. He claims there was "no evidence . . . [S.M.] would be detrimentally impacted by a change of schedule." However, Robert, as the moving party, had the burden of proving that equal timesharing was in the children's best interest. While he takes issue with the trial court's findings, he cites no evidence in support of modification. He merely points to KRS 403.270's rebuttable presumption that equal parenting time is in a child's best interest, but this presumption only applies to custody determinations, not modifications of timesharing, as conceded by Robert. *Layman*, 599 S.W.3d at 431. We cannot say the family court abused its discretion in denying Robert's motion to modify parenting time.

Robert also claims the family court erred by prohibiting the parents from having ex parte contact with the children's therapist, Mrs. Witte. In discovery, the family court reviewed Mrs. Witte's office records, which included voluminous emails between Robert and Mrs. Witte. Even though Mrs. Witte is the children's therapist, many of the emails are Robert venting about Kristen. What the family court found troubling, however, was Mrs. Witte's apparent siding with Robert in many of her responses.

For instance, in one email chain, Robert forwards an email from Kristen to Mrs. Witte and asks her thoughts. In the forwarded email, Kristen expresses her disappointment in Robert's behavior during their last phone conversation. Mrs. Witte responds: "Not surprising. She seems to deeply struggle with relinquishing any parental control to you as the father, in an equal co-parenting decision making stance."

The court commented that as the children's therapist, Mrs. Witte should be neutral regarding the parents. To reestablish trust between the parents and Mrs. Witte, the court ordered the parents to copy each other on any emails to Mrs. Witte and any email from her must be shared with both parents. Robert argues this was an abuse of discretion. It is a little unclear why Robert objects to including Kristen in any emails he sends to Mrs. Witte, the children's therapist. Regardless, we do not find the court's ruling "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *B.B. v. Cabinet for Health and Family Services*, 635 S.W.3d 802, 807 (Ky. 2021), *reh'g denied* (Dec. 16, 2021) (citation omitted). The court rightly found Robert's and Mrs. Witte's email communications inappropriate and unhelpful considering Mrs. Witte's role as the children's therapist and made a reasonable ruling in response. We find no error.

Robert next argues the family court abused its discretion in modifying its prior PSR order. Previously, by agreement, the children attended PSR on

-12-

Sunday mornings. Although Kristen is not Catholic, she agreed to allow the children to attend PSR on her parenting time if Robert would allow S.M. to take dance classes. Kristen later moved to be relieved from the requirement to take the children to PSR classes on her Sundays because she wished to attend church with the minor children at her place of worship. Ultimately, the family court vacated its prior PSR ruling and ordered Robert to arrange for PSR instruction during his own parenting time and at a time that does not interfere with the children's activities.

Again, our standard of review regarding child custody issues is whether the family court's decision was clearly erroneous and constituted an abuse of discretion. *Eviston v. Eviston*, 507 S.W.2d 153, 153 (Ky. 1974). Robert finds two faults with the family court's ruling. First, citing *Burchell v. Burchell*, 684 S.W.2d 296, 300 (Ky. App. 1984), Robert argues the ruling was not based upon the proper standard because the order does not refer to the children's best interests. He also contends the court erred by failing to hold an evidentiary hearing and make requisite findings of fact. We decline to consider these specific arguments because they were not adequately preserved for our review. While Robert's motion to alter, amend, or vacate generally objected to the family court's PSR ruling, his only specific objection was that the family court failed to designate a fixed time for PSR to prevent it from conflicting with the children's activities. "This Court has long held that a party may not argue one theory to the trial court and then a different

theory to an appellate court, which is without authority to review issues not raised in or decided by the trial court." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 743-44 (Ky. 2011) (internal quotation marks and citation omitted).

Finally, Robert argues the family court erred in failing to make its recusal decision final and appealable. Robert concedes the recusal of Kenton Family Court Judge Christopher J. Mehling moving forward is moot as Judge Mehling has retired. The issue is further moot as we have affirmed the family court's rulings, with no issues to remand. Therefore, we decline to address this alleged error further.

Based on the foregoing, the orders of the Kenton Family Court are affirmed. Kristen's motion to strike Robert's brief and dismiss the appeal is denied by a separate order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Laura A. Oldfield
Erlanger, Kentucky

BRIEF FOR APPELLEE:

Tasha K. Schaffner
Jennifer L. Conner
Crestview Hills, Kentucky